## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

VERN MUMMEY,                          :      No. 3:12cv1007
            Plaintiff                 :
                                      :      (Judge Munley)
      v.                              :
                                      :
QUAD/GRAPHICS PRINTING CORP.,         :
            Defendant                 :

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court is defendant's motion for summary judgment.  (Doc. 32).  This motion is fully briefed and ripe for disposition.

## BACKGROUND

The instant age discrimination action arose from Plaintiff Vern Mummey's  (hereinafter "plaintiff") employment with Defendant QG, LLC (hereinafter "defendant").[1]

Plaintiff was born on October 14, 1952 and began working as an accountant for the defendant in 1990 at the defendant's Hazleton facility. (Doc. 33,Def.'s Statement of Material Facts (hereinafter "SOF") ¶¶ 8-9).[2] In 2002, defendant terminated plaintiff's employment as part of a workforce reduction.  (Id. ¶ 12).  Defendant, however, rehired plaintiff as

_____

[1]  Defendant is a leading manufacturer of commercial print and related products and provides media and logistic support for its customers. (Doc. 33, Def.'s Statement of Material Facts (hereinafter "SOF") ¶ 1).

[2]  Plaintiff initially worked for Quebecor, which the defendant acquired on July 2, 2010.  (SOF ¶¶ 4, 9, 11).

an accounting supervisor two years later in 2004.  (Id. ¶ 13).

As an accounting supervisor, plaintiff's primary responsibilities included closing the plant's general ledger, maintaining the fixed asset ledger, performing a detailed profitability analysis and supervising staff. (Id. ¶ 20).  In 2010, plaintiff's title changed from accounting supervisor to senior financial analyst.  (Id. ¶ 18).  Plaintiff continued working as a senior financial analyst until 2012 when his position was eliminated.  (Id. ¶ 40).

Regarding the elimination of plaintiff's senior financial analyst position, defendant asserts that in 2010 it engaged in a system-wide reorganization effort to achieve synergies and reduce costs.  (Id. ¶¶ 4, 35).  Defendant's reduction in force resulted in the closure of fourteen (14) plants and termination of approximately 5,500 employees.  (Id. ¶ 6). Roughly seventy (70) individuals lost their employment at defendant' s Hazleton facility from 2011-2013.  (Id. ¶ 7).

Specifically, in 2011, Frederick Blase (hereinafter "Blase"), controller of defendant's Hazleton facility, recommended the elimination of plaintiff's position.  (Id. ¶ 39).  John Ross (hereinafter "Ross"), Executive Director of Finance for Print Operations, agreed with Blase's recommendation and on February 24 eliminated plaintiff's position.  (Id.)  Plaintiff disputes that his

position was eliminated in defendant's reduction in force plan.  Rather, he claims that he was the victim of age discrimination.

In response, plaintiff filed the instant lawsuit on May 29, 2012.  (Doc. 1).  Plaintiff's single-count complaint alleges a violation of the Age Discrimination in Employment Act (hereinafter "ADEA"), 29 U.S.C.A. § 621 *et seq.*  At the conclusion of discovery, the defendant filed the instant motion for summary judgment.  (Doc. 32 ).  The parties then briefed the issues bringing the case to its present posture.

## JURISDICTION

Because this case is brought pursuant to the ADEA, 29 U.S.C. § 621 *et seq.*, the court has federal question jurisdiction.  See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

## LEGAL STANDARD

Granting summary judgment is proper "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (quoting FED.

R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248.  A fact is material if it might affect the outcome of the suit under the governing law. Id.  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by establishing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts within affidavits, depositions,

4

admissions, or answers to interrogatories demonstrating that there is a genuine issue for trial. Id. at 324.

## DISCUSSION

Defendant moves for summary judgment on plaintiff's ADEA claim asserting three arguments.  First, plaintiff's direct evidence fails to establish age discrimination.  Second, plaintiff's circumstantial evidence does not state a *prima facie* case of age discrimination because he has no evidence that defendant retained a sufficiently younger similarly situated employee.  Third, plaintiff's circumstantial evidence fails to demonstrate pretext.  Plaintiff counters that he can establish age discrimination with both direct and circumstantial evidence.  The court will address these issues *in seriatim*.

## A.  The ADEA

Plaintiff brings his age discrimination claim pursuant to the ADEA, which makes it unlawful for an employer "to discharge any individual . . . because of such individual's age."  29 U.S.C. § 623(a)(1).  The ADEA's prohibition is designed to prevent older workers from "being deprived of employment on the basis of inaccurate and stigmatizing stereotypes," such as the belief that "productivity and competence decline with old age."

Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993).  The ADEA therefore commands employers not to use age as a proxy for an employee's actual characteristics, but rather "to evaluate older employees on their merits."  Id. at 611 (alteration and internal quotation marks omitted).

It is well settled that, to succeed on a claim of discrimination under the ADEA, a plaintiff must demonstrate that his age "actually played a role" in the employer's decision-making process "and had a determinative influence on the outcome."  Id. at 610.  More recently, the United States Supreme Court further held that a plaintiff bringing an age discrimination claim "must prove by a preponderance of the evidence that age was the 'but-for' cause of the challenged employer decision."  Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177-78 (2009).  That is so, the Court explained, because "[u]nlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor" in the employment action.  Id. at 174.  Rather, under the plain language of the ADEA, the complained-of action must have been "because of" the employee's age.  Id. at 176 (quoting 29 U.S.C. § 623(a)(1)).  The burden of persuasion, therefore, is always on the plaintiff

in an age discrimination case, and it requires the plaintiff to establish that the adverse employment action would not have occurred but for the employer's consideration of his age.  Id. at 177.

A plaintiff can satisfy this burden in one of two ways.  First, a plaintiff may demonstrate with direct evidence that age was the "but-for" cause of the employment action.  Anderson v. Consol. Rail Corp., 297 F.3d 242, 247-48 (3d Cir. 2002).  Second, a plaintiff may use the familiar burden shifting framework announced in McDonnell Douglas Corporation v. Green, 411 U.S. 792, 802 (1973) to establish age discrimination with circumstantial evidence.  Smith v. City of Allentown, 589 F.3d 684, 691 (3d Cir. 2009)).  Plaintiff argues that he can establish age discrimination under either method.

## B.  Direct Evidence

Initially, plaintiff claims that his supervisor's ageist remarks establish direct evidence of age discrimination.  The law provides that a plaintiff seeking to demonstrate age discrimination with direct evidence faces a "high hurdle" and requires plaintiff's evidence "reveal a sufficient discriminatory animus" to render any shift in the burden of production "unnecessary."  Anderson, 297 F.3d at 248.  To satisfy this standard, a

7

plaintiff must present "evidence of discriminatory attitudes about age that were causally related to the decision to fire him." Glanzman v. Metro. Mgmt. Corp., 391 F.3d 506, 512 (3d Cir. 2004).  Stated differently, plaintiff's evidence had to "'lead[ ] not only to a ready logical inference of bias, but also to a rational presumption that the person expressing bias acted on it' when he made the challenged employment decision." Fakete v. Aetna, Inc., 308 F.3d 335, 339 (3d Cir. 2002) (quoting Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1097 (3d Cir.1995)); see also Gross, 557 U.S. at 177 (holding that "[a]n act or omission is not regarded as a cause of an event if the particular event would have occurred without it.").

In the instant matter, plaintiff asserts that his direct supervisor stated that he intended to eliminate his position and reassign his duties to two younger employees.  (Doc. 49, Vern Mummey Dep. (hereinafter "Mummey Dep.") at 116, 146).  Specifically, plaintiff testified that in July 2011, Blase advised him that he was getting eliminated in favor of retaining two younger individuals.  (Id. at 116).  From the summer of 2011 until plaintiff was terminated in February 2012, Blase also made comments such as "when are you going to retire?" and "[w]hen are you going to find a job?"

8

(Id. at 157).  Plaintiff responded that he was blown away and never said anything in response.  (Id.)

Defendant asserts that Blase's comments are irrelevant for three reasons.  First, John Ross, not Fred Blase made the decision to lay off plaintiff.  (SOF ¶ 40).  Second, Blase's comments are too remote in time to be directly attributable to Ross' decision to lay off the plaintiff and were not part of any conversation Blase and Ross had regarding plaintiff's performance and possible termination.  (Doc. 51, John Ross Dep. (hereinafter "Ross Dep.") at 33; Doc. 50, Fred Blase Dep. (hereinafter "Blase Dep.") at 93-94).  Third, Ross testified that he did not consider plaintiff's age when he eliminated plaintiff's senior financial position. (Ross Dep. at 33).  As such, the burden shifts to the plaintiff, who must go beyond his pleadings, and designate specific facts within affidavits, depositions, admissions, or answers to interrogatories demonstrating that there is a genuine issue for trial. Celotex, 477 U.S. at 324.  Here, plaintiff has clearly met his burden.

Initially, plaintiff establishes that Blase testified that he does not remember telling plaintiff in the summer of 2011 that he was scheduled for termination and denies making any ageist comment directed at plaintiff.

9

(Blase Dep. at 40).  Blase also denies advising plaintiff whether or not he was going to be terminated in order to keep two younger employees.  (Id. at 41).  Moreover, plaintiff contends that Ross' testimony establishes a triable issue regarding who actually made the decision, as a result of the reduction in force, to eliminate plaintiff's position–John Ross or Fred Blase.  (Compare SOF ¶ 40 (stating that Ross made the decision to eliminate plaintiff's position), with Ross Dep at 32, 36-37, 44, 59-60 (noting that Ross was not the one doing the elimination and that his decision was entirely based upon Blase's recommendation)).

In short, a reasonable jury could find that Blase directed ageist comments toward plaintiff, made the decision to terminate plaintiff's employment and advised plaintiff that his job duties would be reassigned to two younger employees.  This evidence, therefore, may allow a reasonable jury to infer that Blase had a discriminatory attitude about age and that his attitude was causally related to the decision to fire plaintiff.  As such, the court will deny defendant's motion for summary judgment on this issue.

**C.  Circumstantial Evidence**

Plaintiff also asserts that he can establish age discrimination with

circumstantial evidence.  Where, as here, the complaining party relies upon circumstantial evidence to support an age discrimination claim, the Third Circuit Court of Appeals has approved the use of the familiar burden shifting framework announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Smith v. City of Allentown, 589 F.3d 684, 691 (3d Cir. 2009).  First, a plaintiff seeking recovery pursuant to the ADEA must establish a *prima facie* case of discrimination by demonstrating that (1) he is within the protected age class, i.e. over forty; (2) he was qualified for the position at issue; (3) he was dismissed despite being qualified; and (4) he was replaced by a person sufficiently younger to permit an inference of age discrimination.  Id. at 689-90 (citation omitted).

Once the plaintiff establishes this *prima facie* case, "the burden of production shifts to the employer to identify a legitimate non-discriminatory reason for the adverse employment action.  If the employer does so, the burden of production returns to the plaintiff to demonstrate that the employer's proffered rationale was pretext for age discrimination."  Id.  The court will address each step of this burden shifting framework in turn.

**1.  Plaintiff's *prima facie case***

As previously stated, to establish a *prima facie* case of age

11

discrimination a plaintiff must demonstrate (1) that he is within the protected age class, i.e. over forty; (2) that he was qualified for the position at issue; (3) he was dismissed despite being qualified; and (4) he was replaced by a person sufficiently younger to permit an inference of age discrimination.  Id.

At summary judgment, "the evidence must be sufficient to convince a reasonable factfinder to find all of the elements of [the] *prima facie* case."  Duffy v. Paper Magic Grp., 265 F.3d 163, 167 (3d Cir. 2001) (alteration in original) (internal quotation marks omitted).  If a plaintiff fails to raise a genuine dispute of material fact as to any of the elements of the *prima facie* case, he has not met his initial burden, and summary judgment is properly granted for the defendant.   Geraci v. Moody-Tottrup, Int'l, Inc., 82 F.3d 578, 580 (3d Cir. 1996).

In the instant matter, the defendant does not contest the first three elements of plaintiff's *prima facie* case.  Rather, defendant asserts that a "sufficiently younger" "similarly situated" individual did not replace plaintiff because his senior financial analyst position was eliminated.  Plaintiff agrees that his position was eliminated, but contends that the court should apply the standard articulated in so-called "reduction in force" cases.

12

In the reduction in force context, the Third Circuit Court of Appeals has stated that to establish the fourth element of a *prima facie* case under the ADEA, "a plaintiff must demonstrate that the employer retained a sufficiently younger similarly situated employee." Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 301 (3d Cir. 2004). This retained individual, however, "does not need to be situated identically to satisfy the fourth element of plaintiff's *prima facie* case . . . ." Id. at 305. Rather, when the plaintiff holds a "unique position" within the corporate structure, the employee may satisfy the fourth element of the *prima facie* case "by demonstrating that the remaining responsibilities of [his] position were transferred to persons outside the protected class." See Torre v. Casio, Inc., 42 F.3d 826, 830-31 (3d Cir. 1994) (reformulating the fourth element of the *prima facie* case in light of the circumstances of that case).

In the instant case, plaintiff was fifty-nine (59) years old when his senior financial analyst position was eliminated. (SOF ¶¶ 8, 17-20, 40). Plaintiff claims that he held a unique position because he was the only senior financial analyst at the Hazleton plant. (Mummey Dep. at 68-69; Ross Dep. at 32). Plaintiff claims that defendants redistributed most of his responsibilities to two younger employees–Mike Kistulentz, age 31 and

13

Cheri Lutzick, age 42.  (Ross Dep. at 25-26, 44. 57-58; Doc. 41-9, Ex. 25, John Ross email dated 2/28/12; Doc. 53, John Ross email dated 2/2/12; Lutzick Dep. at 6; Kistulentz Dep. at 22-23).  Because plaintiff was twenty-eight (28) years older than Kistulentz and seventeen (17) years older than Lutzick, plaintiff argues that Kistulentz and Lutzick qualify as "sufficiently younger," "similarly situated" employees.

Defendant counters plaintiff's evidence with its own interpretation of the facts.  (Blase Dep. at 9, 12, 88, 93, 42; Ross Dep. at 29).  Specifically, defendant avers that no one filled plaintiff's position, nor were his former duties assigned to Kistulentz and Lutzick.  (Blase Dep. at 42, 76, 88, 93).  In short, the parties are merely arguing the facts regarding whether plaintiff's responsibilities were transferred to "sufficiently younger," "similarly situated" employees.  As such, it is apparent that summary judgment is inappropriate because the jury will be required to weigh the respective testimony and assign credibility.  See Doe v. Luzerne Cnty., 660 F.3d 169, 175 (3d Cir. 2011) (noting that at summary judgment "[t]he court may not . . . weigh the evidence or make credibility determinations because these tasks are left for the fact finder."); see also Doe v. C.A.R.S. Prot. Plus, 527 F.3d 358, 365 (3d Cir. 2008) (explaining that plaintiff's

14

*prima facie* burden is not intended to be particularly difficult, since "[t]he *prima facie* phase of discrimination litigation merely serves to raise a rebuttable presumption of discrimination by 'eliminating the most common nondiscriminatory reasons for the employers' treatment of a plaintiff.'") (quoting Tex. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-54 (1981)).  Ergo, the court will employ the rest of the balancing test.

### 2.  Defendant's nondiscriminatory explanation

Once the plaintiff establishes a *prima facie* case, "the burden of production shifts to the employer to identify a legitimate non-discriminatory reason for the adverse employment action."  Smith, 589 F.3d at 689-90. This burden is "'relatively light'" and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason. Tomasso v. Boeing Co., 445 F.3d 702, 706 (3d Cir. 2006) (quoting Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir.1994)); see also Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 302 (3d Cir. 2012) (describing this step as a "minimal burden").  Defendant has clearly met its burden here.

Defendant asserts that plaintiff's employment was terminated because of a company-wide restructuring and integration effort.  Between

15

2011-2012, defendant's managers were instructed to reduce labor costs. (SOF ¶ 5).  This system-wide restructuring effort resulted in the closure of fourteen (14) plants and termination of approximately 5,500 employees. (Id. ¶ 6).  Further, roughly seventy (70) individuals lost their employment at defendant' s Hazleton facility from 2011-2013.  (Id. ¶ 7).  Therefore, the undisputed record evidence establishes legitimate, non-discriminatory reasons for plaintiff's termination.

### 3. Pretext

Having established a legitimate reason for plaintiff's termination, the burden of production shifts back to plaintiff to "provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination."  Burton, 707 F.3d at 426; see also Doe v. C.A.R.S. Prot. Plus, Inc., 527 F.3d 358, 364 (3d Cir. 2008) (explaining that, "to defeat a motion for summary judgment, [the plaintiff] must show that the employer's articulated reason was a pretext for intentional discrimination").

To establish pretext, plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that

an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  Fuentes, 32 F.3d at 764. The first Fuentes prong is relevant here.

Under this test, a plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."  Id. at 765 (citation omitted) (internal quotation marks omitted).  In so doing, he must "do more than show that [the defendant] was wrong or mistaken in deciding to lay him off.  He must present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision."  Tomasso, 445 F.3d at 706 (internal citation omitted) (internal quotation marks omitted); see also Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir. 1997) (explaining that a plaintiff must demonstrate that the employer's proferred reason was wrong, "but that it was so plainly wrong that it cannot have been the employer's real reason.").

In the instant case, plaintiff has demonstrated three inconsistencies and contradictions regarding defendant's reduction in force plan that could

17

cause a reasonable jury to find it unworthy of credence.   First, plaintiff argues that defendant's reduction in force plan did not exist.  Specifically, the Hazleton plant's controller, human resources director and director of finance all testified that a written reduction in force plan did not exist. (Blase Dep. at 44-45, 48; Ross Dep. at 20-21; Doc. 47, Antolick Dep. at 10).

Moreover, plaintiff contends that if the reduction in force plan did exist, its purpose was to terminate older accounting employees.  As previously stated, the defendant's reduction in force resulted in the closure of fourteen (14) plants and termination of approximately 5,500 employees. (SOF ¶ 6).  Further, roughly seventy (70) individuals lost their employment and defendant' s Hazleton facility from 2011-2013.  (Id. ¶ 7).  Plaintiff, however, demonstrates that he was the only employee involuntarily separated from Hazleton's accounting department.  (Doc. 36-2, Pl.'s Interrog. ¶ 14).  Moreover, from July 10, 2010 through February 24, 2012, defendant involuntarily separated seven corporate accounting employees. (Id.)  Five of the seven terminated employees were over the age of forty (40).  (Id.)

Second, plaintiff claims that defendant's reduction in force plan was

18

a tool, which allowed Blase to eliminate an employee he did not get along

with and felt was too old to maintain a high level of efficiency and

productivity.  Plaintiff cites to the fact that even defendant's own human

resources department recognized the bad blood between plaintiff and

Blase and described their relationship as "like oil and water and the two

did not get along."  (Doc. 47-1, John Ross email dated Feb. 28, 2012).

Furthermore, plaintiff testified that in July 2011, Blase advised him

that he was getting eliminated in favor of retaining two younger individuals.

(Mummey Dep. at 116).  From the summer of 2011 until plaintiff was

terminated in February 2012, Blase also made comments such as "when

are you going to retire?" and "[w]hen are you going to find a job?"

(Mummey Dep. at 157).  Plaintiff responded that he was blown away and

never said anything in response.  (Id.)  On the other hand, Blase does not

remember telling plaintiff in the summer of 2011 that he was scheduled for

termination and denies making any ageist comment directed at plaintiff.

(Blase Dep. at 40).  Blase also denies advising plaintiff whether or not he

was going to be terminated in order to keep two younger employees.  (Id.

at 41).

Third, plaintiff contends that Ross' testimony establishes a triable

issue regarding who actually made the decision, as a result of the reduction in force, to eliminate plaintiff's position–John Ross or Fred Blase.  Defendant argues that Ross, not Blase made the decision to lay off plaintiff.  (SOF ¶ 40).  Ross testified, however, that his "involvement [in plaintiff's termination] was to affirm a recommendation from Blase to eliminate the senior financial analyst position in Hazleton."  (Ross Dep. at 32).  Ross also stated that he was not the one doing the elimination and that his decision was entirely based upon Blase's recommendation.  (Ross Dep. at 44, 59-60).  Moreover, Ross never reviewed plaintiff's performance evaluation.  Rather, he took Blase's word for it that plaintiff was a lower performer than his replacements.  (Ross Dep. at 36-37).

In short, plaintiff contends that Ross failed to evaluate him on the merits and instead substituted Blase's view that he was too old as a proxy for his actual characteristics.  See Hazen Paper Co., 507 U.S. at 610 (noting that the ADEA is designed to prevent older workers from "being deprived of employment on the basis of inaccurate and stigmatizing stereotypes," such as the belief that "productivity and competence decline with old age.").

Viewing the evidence in the light most favorable to plaintiff, a

reasonable jury could conclude that Blase wanted to fire plaintiff because of his age, took affirmative steps to facilitate plaintiff's termination and covered it up in the guise of a reduction in force manifested in Ross' alleged decision to terminate plaintiff's position.  As such, plaintiff has pointed to evidence in the record that could cause a reasonable jury to disbelieve the defendant's articulated legitimate non-discriminatory reason, thereby creating a genuine dispute of material fact as to the credibility of that reason.  Burton, 707 F.3d at 430 (citation omitted) Accordingly, defendant's motion for summary judgment will be denied.

**CONCLUSION**

For the reasons set forth above, defendant's motion for summary judgment will be denied.  A reasonable jury could infer direct age discrimination.  Additionally, a jury could find that plaintiff has established a *prima facie* age discrimination claim.  Moreover, plaintiff has demonstrated several inconsistencies and contradictions regarding defendant's reduction in force plan that could cause a reasonable jury to find it unworthy of credence.  An appropriate order follows.

Date:   7/18/14                                 **s/ James M. Munley**
                                               **JUDGE JAMES M. MUNLEY**
                                               **United States District Court**

21