## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **VERN MUMMEY,**    **Plaintiff** | No. 3:12cv1007 |
| v. | (Judge Munley) |
| **QUAD/GRAPHICS PRINTING CORP.,**    **Defendant** | |

## MEMORANDUM

Before the court for disposition are defendant's motions in limine filed in advance of the pretrial conference. (Docs. 62, 64, 66, 68 & 70). The motions have been fully briefed and are ripe for disposition. For the reasons that follow, the motions will be granted in part and denied in part.

**Background**

The instant age discrimination action arose from Plaintiff Vern Mummey's (hereinafter "plaintiff") employment with Defendant QG, LLC (hereinafter "defendant").[1]

Plaintiff was born on October 14, 1952 and began working as an accountant in 1990 at the defendant's Hazleton facility. (Doc. 33,Def.'s Statement of Material Facts (hereinafter "SOF") ¶¶ 8-9).[2] In 2002, defendant terminated plaintiff's employment as part of a workforce

---

[1] Defendant is a leading manufacturer of commercial print and related products and provides media and logistic support for its customers. (SOF ¶ 1).

[2] Plaintiff initially worked for Quebecor, which the defendant acquired on July 2, 2010. (SOF ¶¶ 4, 9, 11).

reduction. (Id. ¶ 12). Defendant, however, rehired plaintiff as an accounting supervisor two years later in 2004. (Id. ¶ 13).

As an accounting supervisor, plaintiff's primary responsibilities included closing the plant's general ledger, maintaining the fixed asset ledger, performing a detailed profitability analysis and supervising staff. (Id. ¶ 20). In 2010, plaintiff's title changed from accounting supervisor to senior financial analyst. (Id. ¶ 18). Plaintiff continued working as a senior financial analyst until 2012 when defendant eliminated his position. (Id. ¶ 40).

Regarding the elimination of plaintiff's senior financial analyst position, defendant asserts that in 2010 it engaged in a system-wide reorganization effort to achieve synergies and reduce costs. (Id. ¶¶ 4, 35). Defendant's reduction in force resulted in the closure of fourteen (14) plants and termination of approximately 5,500 employees. (Id. ¶ 6). Roughly seventy (70) individuals lost their employment at defendant's Hazleton facility from 2011-2013. (Id. ¶ 7).

Specifically, in 2011, Frederick Blase (hereinafter "Blase"), controller of defendant's Hazleton facility, recommended the elimination of plaintiff's position. (Id. ¶ 39). John Ross (hereinafter "Ross"), Executive Director of Finance for Print Operations, agreed with Blase's recommendation and on

February 24 eliminated plaintiff's position. (Id.)  Plaintiff disputes that his position was eliminated in defendant's reduction in force plan.  Rather, he claims that he was the victim of age discrimination.

In response, plaintiff filed the instant lawsuit on May 29, 2012.  (Doc. 1).  Plaintiff's single-count complaint alleges a violation of the Age Discrimination in Employment Act (hereinafter "ADEA"), 29 U.S.C.A. § 621 *et seq.*  After discovery and a motion for summary judgment, the court ruled that plaintiff's age discrimination claim utilizing direct and/or circumstantial evidence could proceed to trial.

A pretrial conference has been scheduled, and in accordance with the court's rule, defendant has filed five (5) motions in limine.  We will address them *in seriatim*.

**1. Motion to exclude claims for front pay**

Defendant moves to exclude plaintiff from offering at trial evidence pertaining to a front pay award.  The preferred remedy in ADEA cases is back pay coupled with reinstatement.[3]  Maxfield v. Sinclair Int'l, 766 F.2d 788, 796 (3d Cir. 1985).  "Back pay compensates the plaintiff for loss of past wages, and reinstatement insures that no future losses will accrue

---

[3] "The relevant time period for calculating an award of back pay begins with wrongful termination and ends at the time of trial."  Blum v. Witco Chem. Corp., 829 F. 2d 367, 373 (3d Cir. 1987) (citation omitted).

3

due to discrimination." Blum v. Witco Chem. Corp., 829 F. 2d 367, 373 (3d Cir. 1987).

The Third Circuit has recognized, however, that reinstatement is not always feasible because of a reduction in workforce or irreparable animosity between the parties. Id. at 373-74. In such a case, "back pay will still defray past losses, but the 'alternate remedy' of front pay must be used to make the plaintiff whole for future expected losses." Id. at 374 (citing Maxfield, 766 F.2d at 796). A court may award front pay "for a reasonable future period required for the victim to reestablish [his] rightful place in the job market." Donlin v. Philips Lighting N. Am. Corp., 581 F.3d 73, 87 (3d Cir. 2009) (quoting Gross v. Exxon Office Sys. Co., 747 F.2d 885, 889-90 (3d Cir. 1984)).[4]

In the instant matter, defendant seeks to preclude evidence of front pay because plaintiff has no expert witness to address front pay. Plaintiff seeks to offer his own testimony regarding front pay. The Third Circuit Court of Appeals has held that "expert testimony is not always required to prove damages in a case where projected future earnings are a part of the calculation." Donlin, 581 F.3d at 82 (internal citation omitted) (internal

---

[4] The Third Circuit has held that awarding front pay for eight (8) or ten (10) years until an individual retires is not an abuse of discretion. Blum, 829 F. 2d at 376; Donlin, 518 F.3d at 88.

4

quotation mars omitted).  Rather, Rule 701 "requires a lay witness to have a reasonable basis grounded either in experience or specialized knowledge for arriving at the opinion he or she expresses."[5]  Id.  Further, "a trial judge must rigorously examine the reliability of a layperson's opinion by ensuring that the witness possesses sufficient specialized knowledge or experience which is germane to the opinion offered."  Id. at 83 (citing Asplundh Mfg. v. Benton Harbor Eng'g, 570 F.3d 1190, 1200-01 (3d Cir. 1995)).

    Here, it is undisputed that plaintiff possesses the experience and institutional knowledge to competently testify regarding the issue of front pay.  Plaintiff worked in defendant's financial department for twenty (20) years.  As a senior financial analyst, plaintiff became familiar with defendant's compensation structure and his experiences enhance his ability to project future earnings.  As such, the court will allow plaintiff to testify on the issue of front pay.

    Defendant also contends that a front pay award is inappropriate because plaintiff has obtained employment in which he earns wages

---

[5] Federal law limits lay opinion testimony to that which is "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  FED. R. EVID. 701.

greater than he earned with the defendant. Specifically, in April 2013 plaintiff began working, and continues to work, at Preferred Meals in Moosic, Pennsylvania earning $61,000.00 per year. Defendant asserts that it only paid plaintiff $58,000.00 per year. Accordingly, plaintiff earns more at his new employment that he did working for the defendant.

Plaintiff counters that the total value of defendant's compensation package was in excess of $68,000.00 in 2012, $70,600.00 in 2013 and $72,700.00 in 2014. Thus, plaintiff is entitled to a front pay award for the difference between his earning with the defendant and Preferred Meals.

Initially, the court must decide whether reinstatement is feasible or whether front pay should be awarded in lieu of reinstatement. Once the court makes this equitable decision, the court may submit the issue of front pay to the jury and obtain an advisory verdict. Donlin, 581 F.3d at 88 n.11 (stating that "a district court [is] not required to submit the issue of front pay to the advisory jury . . . because a bench trial is sufficient to determine an equitable award such as front pay.").[6] Because the parties are arguing over disputed facts, the court will submit the issue of front pay

---

[6] The court notes that the jury, in calculating a front pay award, "must consider the expected future damages caused by defendant's wrongful conduct from the date of the judgment to retirement." Blum, 829 F. 2d at 373. The plaintiff, however, "has a duty to mitigate damages, and his new salary will be deducted from the old to avoid a windfall award." Id.

to the jury for an advisory verdict if the court decides that front pay should be awarded in lieu of reinstatement. Therefore, the court will deny defendant's motion to exclude plaintiff's claims for front pay.

Alternatively, defendant argues that plaintiff's claims for front pay establish that plaintiff cannot seek back pay from the date he began working at Preferred Meals. Specifically, plaintiff admitted that he stopped seeking full-time permanent employment in April 2013 after he began working at Preferred Meals. In response, plaintiff claims that his position with Preferred Meals is temporary because he is substituting for a woman on extended FMLA leave. Plaintiff avers that when the woman returns, Preferred Meals will terminate his employment.

After careful consideration, the court will withhold ruling until trial on the dates to which plaintiff may be entitled to a back pay award. If appropriate, the court will submit this issue to the jury. See Lorillard v. Pons, 434 U.S. 575, 584 (1978) (noting that the ADEA incorporates the FLSA provision that employers "shall be liable" for amounts deemed unpaid minimum wages or overtime compensation, while under Title VII, the availability of back pay is a matter of equitable discretion, and holding that in a private action under the ADEA a trial by jury is available where sought by one of the parties); Anastasio v. Schering Corp., 838 F.2d 701

(3d Cir. 1988) (distinguishing the ADEA, where back pay is a mandatory element of damages, from the discretionary back pay remedy in Title VII).

In sum, the court will allow plaintiff to testify on the issue of front pay. Moreover, if the court determines that front pay should be awarded in lieu of reinstatement, the amount of front pay damages will be submitted to the jury for an advisory verdict. Finally, the court will reserve ruling on the dates to which plaintiff may be entitled to a back pay award until trial. Accordingly, defendant's motion in limine on these issues will be denied.

**2. Motion to exclude compensatory and punitive damages**

The next motion in limine seeks to preclude from trial any evidence regarding plaintiff's potential claims for compensatory and punitive damages. Defendant asserts that compensatory damages (emotional distress or pain and suffering) and punitive damages are not available remedies under the ADEA. Plaintiff does not object to this motion in limine. Ergo, the court will grant defendant's motion to exclude compensatory and punitive damages as unopposed.

**3. Motion to exclude evidence that plaintiff was replaced**

Defendant seeks to preclude from trial any evidence establishing that a "sufficiently younger" "similarly situated" individual replaced plaintiff.[7]

---

[7] To establish a *prima facie* case of age discrimination a plaintiff must demonstrate (1) that he is within the protected age class, i.e. over

8

Specifically, defendant contends that it eliminated plaintiff's position and therefore, no one replaced plaintiff. Plaintiff agrees that his position was eliminated. Plaintiff, however, argues that the Third Circuit Court of Appeals' "reduction in force" cases create an alternate avenue allowing him to establish that a sufficiently younger person replaced him, which permits an inference of age discrimination. After careful consideration, the court agrees with the plaintiff.

Federal law provides that relevant evidence is generally admissible. FED. R. EVID. 402. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. "The plain meaning of the Rule demonstrates that the scope of relevant evidence is intended to be broad, and the authorities support such a broad reading." McQueeney v. Wilmington Trust Co., 779 F.2d 916, 922 (3d Cir. 1985).

Here, plaintiff's evidence regarding whether he was replaced is indeed relevant to establishing a circumstantial claim for age discrimination. As stated in our summary judgment opinion:

---

forty; (2) that he was qualified for the position at issue; (3) he was dismissed despite being qualified; and (4) he was replaced by a person sufficiently younger to permit an inference of age discrimination. Smith v. City of Allentown, 589 F.3d 684, 691 (3d Cir. 2009)

9

In the reduction in force context, the Third Circuit Court of Appeals has stated that to establish the fourth element of a *prima facie* case under the ADEA, "a plaintiff must demonstrate that the employer retained a sufficiently younger similarly situated employee." Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 301 (3d Cir. 2004). This retained individual, however, "does not need to be situated identically to satisfy the fourth element of plaintiff's *prima facie* case . . . ." Id. at 305. Rather, when the plaintiff holds a "unique position" within the corporate structure, the employee may satisfy the fourth element of the *prima facie* case "by demonstrating that the remaining responsibilities of [his] position were transferred to persons outside the protected class." See Torre v. Casio, Inc., 42 F.3d 826, 830-31 (3d Cir. 1994) (reformulating the fourth element of the *prima facie* case in light of the circumstances of that case).

In the instant case, plaintiff was fifty-nine (59) years old when his senior financial analyst position was eliminated. (SOF ¶¶ 8, 17-20, 40). Plaintiff claims that he held a unique position because he was the only senior financial analyst at the Hazleton plant. (Mummey Dep. at 68-69; Ross Dep. at 32). Plaintiff claims that defendants redistributed most of his responsibilities to two younger employees–Mike Kistulentz, age 31 and Cheri Lutzick, age 42. (Ross Dep. at 25-26, 44. 57-58; Doc. 41-9, Ex. 25, John Ross email dated 2/28/12; Doc. 53, John Ross email dated 2/2/12; Lutzick Dep. at 6; Kistulentz Dep. at 22-23). Because plaintiff was twenty-eight (28) years older than Kistulentz and seventeen (17) years older than Lutzick, plaintiff argues that Kistulentz and Lutzick qualify as "sufficiently younger," "similarly situated" employees.

Defendant counters plaintiff's evidence with its own interpretation of the facts. (Blase Dep. at 9, 12, 88, 93, 42; Ross Dep. at 29). Specifically, defendant avers that no one filled plaintiff's position, nor were his former duties assigned to Kistulentz and Lutzick. (Blase Dep. at 42, 76, 88, 93). In short, the parties are merely arguing the facts regarding whether plaintiff's responsibilities were transferred to "sufficiently younger," "similarly situated" employees. As

10

such, it is apparent that summary judgment is inappropriate because the jury will be required to weigh the respective testimony and assign credibility. See Doe v. Luzerne Cnty., 660 F.3d 169, 175 (3d Cir. 2011) (noting that at summary judgment "[t]he court may not . . . weigh the evidence or make credibility determinations because these tasks are left for the fact finder."); see also Doe v. C.A.R.S. Prot. Plus, 527 F.3d 358, 365 (3d Cir. 2008) (explaining that plaintiff's *prima facie* burden is not intended to be particularly difficult, since "[t]he *prima facie* phase of discrimination litigation merely serves to raise a rebuttable presumption of discrimination by 'eliminating the most common nondiscriminatory reasons for the employers' treatment of a plaintiff.'") (quoting Tex. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-54 (1981)).

Mummey v. Quad/Graphics Printing Corp., No. 3:12-CV-1007, 2014 WL 3557177, at *5-6 (M.D. Pa. July 18, 2014). Plaintiff's evidence regarding whether his job duties were transferred to individuals outside of the protected class is relevant evidence because it satisfies the fourth element of his *prima facie* case–whether plaintiff was replaced by a person sufficiently younger to permit an inference of age discrimination. Accordingly, defendant's motion in limine to preclude evidence that plaintiff was replaced will be denied.

**4. Motion to exclude plaintiff's expert witness**

Defendant next moves to exclude plaintiff's purported expert witness from testifying at trial regarding plaintiff's claim for economic damages. Plaintiff agrees that he will not call an expert to testify regarding economic

11

damages.  As such, defendant's motion will be granted as unopposed.

**5.  Motion to exclude claims for liquidated damages**

Defendant's final motion in limine seeks to preclude plaintiff's claims for liquidated damages, contending that plaintiff failed to produce evidence supporting these claims.  Plaintiff argues that defendant's conduct was so wilful and egregious that liquidated damages are proper.  After careful consideration, the court agrees with the plaintiff.

The ADEA utilizes "the enforcement powers, remedies, and procedures of the Fair Labor Standards Act (hereinafter "FLSA").  Potence v. Hazleton Area Sch. Dist., 357 F.3d 366, 372 (3d Cir. 2004).  Pursuant to the FLSA, "'any employer who violates [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.'"  Id. (quoting 29 U.S.C. § 216(b)).  Under the ADEA, "liquidated damages shall be payable only in cases of willful violations of this Act."  29 U.S.C. § 626(b); Dreyer v. Arco Chem. Co., 801 F.2d 651, 656 (3d Cir. 1986).  A plaintiff demonstrates a willful violation by establishing that the defendant "knew or showed reckless disregard for the matter whether its conduct was prohibited by the ADEA."  Trans World Airlines v. Thurston, 469 U.S. 111,

12

126 (1985).

The Third Circuit Court of Appeals has noted the following examples of an employer's willfulness: "(1) where evidence exists that shows that the employer had previously violated the ADEA; (2) where the termination of the employee came at a time when it would deprive him or her of a pension; or (3) when the circumstances of the violation itself were egregious, as in the systematic purging of older people from the employee staff." Kelly v. Matlack, Inc., 903 F.2d 978, 982 (3d Cir. 1990) (citing Dreyer v. Arco Chemical Co., 801 F.2d 651, 658 (3d Cir. 1986)). The Third Circuit has made clear that pretext alone is an insufficient basis to award liquidated damages. Kelly, 903 F.2d at 983.

In the instant matter, defendant argues that John Ross, defendant's executive director of finance for print operations, made the decision to terminate plaintiff's employment. Further, Ross did not have any knowledge of Blase's age-related comments when he made the decision to layoff plaintiff.[8] The court disagrees.

---

[8] The record provides that Blase advised plaintiff in 2011 that he was being eliminated in favor of retaining two younger individuals. (Mummey Dep. at 116). From the summer of 2011 until plaintiff was terminated in February 2012, Blase also made comments such as "when are you going to retire?" and "[w]hen are you going to find a job?" (Mummey Dep. at 157). Plaintiff responded that he was blown away and never said anything in response. (Id.)

When, how and why Ross decided to terminate plaintiff's employment is a disputed issue of material fact. As discussed in the court's summary judgment opinion:

> [P]laintiff contends that Ross' testimony establishes a triable issue regarding who actually made the decision, as a result of the reduction in force, to eliminate plaintiff's position–John Ross or Fred Blase. Defendant argues that Ross, not Blase made the decision to lay off plaintiff. (SOF ¶ 40). Ross testified, however, that his "involvement [in plaintiff's termination] was to affirm a recommendation from Blase to eliminate the senior financial analyst position in Hazleton." (Ross Dep. at 32). Ross also stated that he was not the one doing the elimination and that his decision was entirely based upon Blase's recommendation. (Ross Dep. at 44, 59-60). Moreover, Ross never reviewed plaintiff's performance evaluation. Rather, he took Blase's word for it that plaintiff was a lower performer than his replacements. (Ross Dep. at 36-37).
> In short, plaintiff contends that Ross failed to evaluate him on the merits and instead substituted Blase's view that he was too old as a proxy for his actual characteristics. See Hazen Paper Co., 507 U.S. at 610 (noting that the ADEA is designed to prevent older workers from "being deprived of employment on the basis of inaccurate and stigmatizing stereotypes," such as the belief that "productivity and competence decline with old age.").
> Viewing the evidence in the light most favorable to plaintiff, a reasonable jury could conclude that Blase wanted to fire plaintiff because of his age, took affirmative steps to

---

On the other hand, Blase does not remember telling plaintiff in the summer of 2011 that he was scheduled for termination and denies making any ageist comment directed at plaintiff. (Blase Dep. at 40). Blase also denies advising plaintiff whether or not he was going to be terminated in order to keep two younger employees. (Id. at 41). Accordingly, the factfinder must determine what Blase said, or did not say, at trial.

>facilitate plaintiff's termination and covered it up in the guise
>of a reduction in force manifested in Ross' alleged decision
>to terminate plaintiff's position.

Mummey, 2014 WL 3557177, at *8-9.  Thus, the factfinder must determine whether Ross and Blase's actions demonstrate that the defendant willingly violated the ADEA or otherwise exercised reckless disregard for the provisions of the ADEA.  Therefore, the court will deny defendant's motion in limine to exclude plaintiff's claims for liquidated damages.

**Conclusion**

For the above-stated reasons, defendant's motions in limine will be granted in part and denied in part.  The court will deny defendant's motions to preclude from trial evidence regarding front pay, that plaintiff was replaced and plaintiff's claims for liquidated damages.  The court will grant defendant's motion pertaining to the issues of compensatory and punitive damages and plaintiff's purported expert witness as unopposed.  An appropriate order follows.

Date:  11/13/2014                              s/ James M. Munley
                                                          **JUDGE JAMES M. MUNLEY**
                                                          **United States District Court**